1
2
3
4
5
6
7
8 **UNITED STATES DISTRICT COURT**
9 **CENTRAL DISTRICT OF CALIFORNIA**
10 **WESTERN DIVISION**
11
12 BRIAN WHITAKER,                    )    No. CV 19-9277-PLA
                                      )
13          Plaintiff,                )    **FINDINGS OF FACT AND CONCLUSIONS**
                                      )    **OF LAW**
14          v.                        )
                                      )
15 SENSU, INC.,                       )
                                      )
16          Defendant.                )
                                      )
17 ─────────────────────────────────  )

18      On October 29, 2019, plaintiff filed a Complaint in this action; on August 20, 2020, he filed

19 a First Amended Complaint ("FAC").

20      Plaintiff is a quadriplegic whose ability to walk is substantially limited and he uses a

21 wheelchair for mobility.  (FAC ¶ 1).  Defendant owns a men's clothing store (the "Store").  (Id. ¶¶

22 2-3).  Plaintiff alleges that he went to the Store in October 2019 and that "defendants failed to

23 provide accessible sales counters."  (Id. ¶¶ 8, 11; Trial Transcript ("Tr. Trans.") at 9, 17-18).

24 Plaintiff brought claims against defendant for violation of the Americans with Disabilities Act of

25 1990, 42 U.S.C. § 12101, et seq. ("ADA"), and violation of California's Unruh Civil Rights Act,

26 California Civil Code sections 51-53.  (FAC ¶¶ 23-29, 30-33).  He seeks injunctive relief compelling

27 defendant to comply with the ADA and the Unruh Civil Rights Act; damages under the Unruh Civil

28 Rights Act, which provides for actual damages and a statutory minimum of $4,000 for each

offense; and reasonable attorney fees, litigation expenses, and costs of suit, pursuant to 42 U.S.C. § 12205, and California Civil Code section 52.  (FAC Prayer ¶¶ 1-3).

A bench trial was held on September 22, 2021.  (ECF No. 110).  Prior to trial the parties each submitted written Opening Statements (ECF Nos. 108, 109), and the direct testimony of their witnesses by declarations.  (ECF Nos. 68-71, 101-02).  At trial, defendant cross-examined plaintiff Brian Whitaker; plaintiff's investigator Evens Louis; plaintiff's expert witness, architect Soyoung Ward; and plaintiff's expert witness, licensed general contractor Cory Slater.  Plaintiff cross-examined defendant's principal Menachem Hadar.  After the one-day trial, the parties submitted the following:  post-trial briefs and proposed findings of fact and conclusions of law (ECF Nos. 117, 118), and a Reply to the other party's post-trial briefs.  (ECF Nos. 120, 121).

Based on the Court's consideration of the parties' briefings, and the evidence presented at the non-jury trial of this action on September 22, 2021, including the live testimony of the parties' witnesses, each of whom the Court was able to assess, the Court issues the following findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure. To the extent that any findings of fact are included in the Conclusions of Law section, they shall be deemed findings of fact, and to the extent that any conclusions of law are included in the Findings of Fact section, they shall be deemed conclusions of law.

## **FINDINGS OF FACT**

1.      Plaintiff is a physically disabled individual, suffering from a spinal cord injury, which substantially limits his ability to walk on his own and substantially limits the use of his hands.  He uses a wheelchair for mobility.  (ECF No. 100 ("Stipulated Facts"); Whitaker Direct Testimony ¶ 2).

2.      Defendant Sensu, Inc. owns and operates the H. Lorenzo women's clothing Store located at 8630 Sunset Blvd., West Hollywood, California.  The Store is open to the public and is a place of public accommodation.  (Stipulated Facts; Hadar Direct Testimony ¶ 1; Tr. Trans. at 15).

/

/

3.      Inside the Store, there is a U-shaped sales counter facing the Store's entrance.  The interior of the counter is approximately 30-1/2 inches from the floor and 48 inches long (the "Interior Counter").  On top of the Interior Counter is a computer screen, a keyboard, a cash drawer, two phones, assorted office supplies, and a credit card reader "point of sales" device.  (Stipulated Facts).

4.      The open area of the Interior Counter is not visible from the front of the store.  (Stipulated Facts; Tr. Trans. at 17-18).

5.      On October 9, 2019, plaintiff went to the Store to shop and to assess the Store for compliance with ADA laws.  He did not actually enter the Store.  From just outside the front entrance of the Store plaintiff testified that he could see the customer sales transaction counter, but did not see any accessible lowered sales counter.  (Tr. Trans. at 17-18).  He testified that the sales counter "didn't look compliant" from his vantage point outside the store.  (Id. at 18).  Plaintiff took two photographs of the sales counter that he could see from outside the Store.  (Stipulated Facts; Whitaker Direct Testimony ¶¶ 4-5; Tr. Trans. at 9, 10).  Plaintiff testified that he was "frustrated by the lack of lowered sales counter, so . . . left without making a purchase."  (Whitaker Direct Testimony ¶¶ 7-8).

6.      There is only one sales counter area in the Store.  (Tr. Trans. at 71-72, 89).

7.      Plaintiff did not inquire of any of defendant's employees as to whether the Store had an ADA-approved space in which he could conduct business.  (Id. at 16-18).  He testified that he did not ask anyone whether there was an accessible counter because he has "found that many times when I ask about different things as far as accessibility, counters, you know, whatever it is, that often, you know, it's like a bother.  It's like I'm bothering.  So I don't even want to be inconvenienced by that."  (Id. at 16).  He also stated that based on past experience, "people say that they care and that they'll change something, and I come back, and it hasn't been changed."  (Id. at 17).  He testified that rather than contact anybody at the store about an accessible sales counter, he chose to file a lawsuit.  (Id. at 18).  He also confirmed that this is "true in basically all of the thousands of [ADA] cases" that he has filed in the Central District of California.  (Id.).

/

8.      For the reasons stated above, plaintiff did not enter the store and decided not to shop at the store.  (Whitaker Direct Testimony ¶ 8; Tr. Trans. at 16).

9.      Plaintiff testified that he would not agree that the Interior Counter was a sales counter.  (Tr. Trans. at 12-13).  According to plaintiff, that is because "it looks like it's a desk," and he has "never done a transaction where there's a telephone."  (Id. at 27).  He agreed that -- based on his experience -- if the Store had a 48-inch-wide counter that was 30-1/2 inches above the floor or less than 36 inches above the floor, "it would be in compliance with the ADA."  (Id. at 22).  He also testified that he is not aware of any ADA rule requiring that a transaction between a person with a disability and the store employee take place on opposite sides of any kind of counter.  (Id. at 34, 35).  Plaintiff further testified that if the opening to the Interior Counter was 48 inches, it would comply with ADA rules and allow him to make a perpendicular entry to the lowered counter, as well as provide sufficient space for making a parallel turn if he needed to operate anything on the desk in order to conduct a transaction.  (Id.).

10.     Mr. Louis, plaintiff's investigator, visited the Store on October 24, 2019, to conduct his investigation.  (Louis Direct Testimony ¶ 3).  He took three photographs that were admitted at trial as Exhibits 3 through 5.  (Id. ¶ 4).  He did not measure the Interior Counter because it did not appear to him "to be a sales and service counter for customer use because he did not expect customers to be given direct access to the area where the Store's cash register was located and there were no signs indicating otherwise."  (Id. ¶ 8).  He did not know whether the Interior Counter "was or was not compliant with the ADA."  (Tr. Trans. at 44).  While he was in the Store, Mr. Louis did not see any customers in the Interior Counter area.  (Id. at 51).

11.     There is no signage, gate, barrier, or other indication that the Interior Counter area either is or is not accessible to defendant's clients.  (Id. at 67-68, 71-72).

12.     Ms. Ward, plaintiff's expert, testified that she is unaware of any ADA requirement that requires signage in a store indicating the location of an ADA compliant counter.  (Id. at 71-74).

13.     Ms. Ward testified that the measurements of the Interior Counter comply with the ADA for accessible counters.  (Id. at 60, 65-66).  She did not agree that the Interior Counter qualifies as a sales and service counter.  (Ward Direct Testimony ¶ 11).  She bases her opinion

4

1   on the following:  (a) the layout of the sales and service counter; (b) the lack of any signage

2   directing disabled customers to access the Interior Counter; and (c) the fact that "with an

3   employee present at the computer desk, there would be insufficient floor space for a patron in a

4   wheelchair." (Ward Direct Testimony ¶ 12; Tr. Trans. at 60-64).

5        14.   Ms. Ward testified that as an architect, when she locates and designs a sales

6   counter, "it's typically  . . . clearly visible from [the] entry and easy to find from all area[s] of the

7   store." (Tr. Trans. at 64).  She also testified that there is no rule that requires an ADA compliant

8   sales counter be visible from anywhere in the store.  (<u>Id.</u>).

9        15.   Ms. Ward testified that it is her belief that "the law says you have to give more than

10   48 inches for a . . . parallel approach [to the accessible counter] because there's a sales employee

11   present." (Tr. Trans. at 66-67).  She was unable to provide a citation to a rule that would require

12   a longer counter length if an employee was present.  (<u>Id.</u> at 67).  She testified that there is no

13   required depth for an ADA-compliant counter space.  (<u>Id.</u> at 69).

14        16.   Mr. Slater, plaintiff's expert licensed general contractor, examined photographs of

15   the sales counter at the Store. (Slater Direct Testimony ¶ 7; Tr. Trans. at 76-77).  He testified that

16   it would cost approximately $686 to lower a 36-inch-wide section of the existing sales counter to

17   a height of 34 inches.  (Slater Direct Testimony ¶ 8; Tr. Trans. at 80-81).

18        17.   Mr. Hadar testified that the Store's clients have used the Interior Counter on many

19   occasions and for differing reasons, including to view pictures of items at defendant's other store

20   locations or to conduct sales transactions, including entry of their personal credit card security

21   codes into the card reader.  (Hadar Direct Testimony ¶ 10; Tr. Trans. at 90-91, 96-102).

22        18.   Ms. Ward testified that she finds it "unlikely that the stated policy of the Store would

23   be to allow patrons access to the computer desk, where the cash register is kept." (Ward Direct

24   Testimony ¶ 12).

25

26       The Court finds the testimony of Mr. Hadar concerning use of the Interior Counter to be

27   entirely credible, and the testimony of plaintiff and his expert witness, Ms. Ward, to be less so.

28   The Court has considered, among other things, the manner in which they and the other witnesses

testified, their interest in the outcome of the case, and the reasonableness of their testimony in light of all of the evidence. Indeed, the fact that plaintiff took several photographs without ever entering the Store or making any inquiries relating to an ADA-compliant counter, indicates that he was only preparing for litigation and further undermines his credibility. Ms. Ward's testimony was based largely on her own personal beliefs and/or speculation, rather than on any specific rules or regulations.

## CONCLUSIONS OF LAW

A.      To show liability under the ADA, plaintiff must establish the following: (1) that plaintiff is disabled within the meaning of the ADA (42 U.S.C. § 12102(1)(A)); (2) that the defendant owns, leases, or operates a place of public accommodation (42 U.S.C. § 12182(a)); and (3) that defendant discriminated against plaintiff within the meaning of the ADA. <u>Arizona ex rel. Goddard v. Harkins Amusement Enters., Inc.</u>, 603 F.3d 666, 670 (9th Cir. 2010). The first two elements, as reflected in the Findings of Fact above, are not in dispute.

B.      Plaintiff will prove discrimination if he shows that defendant's facility had unlawful architectural barriers (42 U.S.C. § 12182(b)(2)(A)(iv)), and that plaintiff encountered the architectural barrier precluding him full and equal access to the facility. 42 U.S.C. § 12188(a).

C.      To show a violation of the Unruh Act pursuant to California Civil Code sections 51(f), 52(a), plaintiff must show the following: (1) that defendant violated the ADA with respect to plaintiff; and (2) that the violation denied plaintiff full and equal access to the facility (Cal. Civ. Code § 55.56(a)-(d)). Thus, plaintiff's Unruh Civil Rights Act claim is premised on the existence of an ADA violation and if plaintiff fails to prove an ADA violation, he has also failed to prove an Unruh Act violation.

D.      The elements required to prove defendant's affirmative defenses of insufficiency of the evidence, reasonable accommodation, business necessity, and/or that corrections are not readily achievable, include the following:

1.      Defendant maintains an Interior Counter that is approximately 30-1/2 inches from the floor and 48 inches long;

2.     The Interior Counter is in an area that is open to the public, including persons with disabilities such as plaintiff;

3.     Maintenance of the Interior Counter is appropriate and a reasonable accommodation.

E.     The evidence as stipulated to by the parties, demonstrates that the Store has an Interior Counter that is wheelchair accessible and is approximately 30-1/2 inches from the floor and 48 inches long.  The dimensions of the Interior Counter comply with ADA height and length requirements.

F.     The evidence presented demonstrates that plaintiff did not enter the Store, or inquire of any of defendant's employees as to the existence of an ADA-compliant counter; neither could he see the ADA-compliant Interior Counter from his vantage point outside the Store.

G.     The evidence presented demonstrates that the Interior Counter is in an area that is open to the public, including persons with disabilities such as plaintiff, and that the Store's customers have often used the Interior Counter area to complete transactions and for other reasons.

H.     The evidence presented demonstrates that defendant's Store did not have an unlawful architectural barrier in the form of a non-ADA compliant counter; thus, plaintiff did not (and could not) encounter any architectural barrier precluding him from full and equal access to the Store or its Interior Counter.

I.     Even assuming that lowering the exterior sales counter is readily achievable, this fact is not relevant to the Court's determination because the Interior Counter complies with ADA requirements.

J.     The evidence presented demonstrates that there is no ADA requirement that there be signage indicating where an ADA-compliant counter is located.

K.     The evidence presented demonstrates that defendant's Interior Counter reasonably accommodates plaintiff.

L.     The Court concludes, therefore, that defendant's Interior Counter is an ADA-compliant sales counter, and plaintiff has not met his burden of establishing that defendant

1  discriminated against plaintiff by failing to have an ADA-compliant sales counter.  Thus, defendant

2  is not liable to plaintiff under either the ADA or the California Unruh Civil Rights Act.

3          M.      The Court therefore denies plaintiff's prayer for relief and enters judgment in favor

4  of defendant.

5          IT IS SO ORDERED.

6

7  DATED:  December 9, 2021                    _____

8                                                                          PAUL L. ABRAMS
                                                                    UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8